UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORGANIC SEED GROWERS AND TRADE ASSOCIATION, et al., | ECF CASE |
| Plaintiffs, | No. 11-cv-2163-NRB |
| v. | Jury Demanded |
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | |
| Defendants. | |

### DECLARATION OF BRYCE STEPHENS
### IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

I, Bryce Stephens, declare as follows:

1.  I am a farmer/rancher in northwest Kansas. I have a degree in Anthropology with studies in business and education at Wichita State University and law at Washburn University.

2.  On my 1,000-acre farm, I grow a variety of certified organic crops including wheat and alfalfa. I also raise livestock on my farm. My farm has been certified organic since 1994.

3.  I am also Vice President and a member of Organic Seed Growers and Trade Association ("OSGATA").

4.  I submit this declaration on behalf of myself and OSGATA as plaintiffs in this action.

<u>My Farm</u>

5.     In the past, I grew organic corn and soybeans on my farm, but I had to stop doing so after Monsanto's introduction of transgenic seed for those crops because if I continued farming organic corn and soybeans they would become contaminated by transgenic seed and that would subject me to being accused of patent infringement by Monsanto.

6.     There are several reasons why I feared (and still fear) my fields would become contaminated by transgenic crops. First, I had attended an annual meeting of the Kansas Organic Producers (KOP) Marketing Cooperative, which has a lab that tests corn and soybeans for GMO's. The testing was done to prevent loads being rejected by buyers who were known to test product loads for such contamination. The test equipment was demonstrated at the meeting on samples of organic corn from KOP members. Even though measures were taken to avoid contamination by sourcing organic seed, separation distances, different planting dates and clean equipment, there was nonetheless significant contamination in the lots sampled.

7.     Second, my fear is heightened by the fact that I am surrounded by neighbors who grow dryland transgenic no-till corn, the seed for which I believe comes from Monsanto. During pollination, if the wind blows from any direction I will be cross contaminated even if I try sourcing organic corn seed (which may itself be contaminated) and planting so that cross pollination does not occur. This risk is severe because my neighbors plant both the short season and long season corns.

8.     I have long been aware of Monsanto's campaign of patent accusations against

farmers. This has been well publicized in news reports and documentaries about the farming industry that I have read and seen. I have also personally contributed support through certain organizations to help a specific farmer that was sued by Monsanto for patent infringement.

9. I believe that Monsanto would accuse me of patent infringement if they believed I was in possession of their seed, regardless of whether I intended to be or not.

10. I am, to this day, still afraid that if I resume production of corn and soybeans on my farm, something I used to do and am capable of doing again, my crops will become contaminated by Monsanto's transgenic seed and, as a result, I will be vulnerable to a patent infringement lawsuit.

11. My fear of contamination by transgenic corn and soybeans and the resulting risk of being accused of patent infringement prevent me from growing corn and soybeans on my farm. There is no other reason why I do not grow those crops and I would very much like to do so.

12. Monsanto has never promised me that they would not sue me for patent infringement if I became contaminated. Through my attorneys, I have asked them to give me such assurances, but they have failed to do so. This has caused me to be even more concerned that I will be sued by them if their seed ever finds its way onto my property.

OSGATA

13. OSGATA's mission is to develop, protect and promote the organic seed trade and its growers, and assure that the organic community has access to excellent quality organic seed,

free of contaminants and adapted to the diverse needs of local organic agriculture. OSGATA works to defend a farmer's right to save and trade seed, encourage the viability of regional organic seed companies, promote the right to farm, protected from GMO contamination, ensure the right to true choice in the marketplace for farmers and consumers, and protect farmer developed seed varieties.

14. OSGATA's membership is comprised of organic farmers who produce seed crops, organic seed breeders, organic seed companies, and affiliate organizations and non-voting associate members composed of colleagues that support organic farmers and organic seed systems.

15. OSGATA joined this suit because it seeks to protect the interests of its member organic farmers and seed distributors who are threatened by having their seed contaminated by Monsanto's transgenic GMO seed. Such contamination would undoubtedly lead to patent infringement accusations being made by Monsanto against OSGATA's members. Those accusations would threaten the very existence of OSGATA's members, and, as a result, OSGATA itself. This suit seeks to protect OSGATA's members from such patent infringement accusations.

16. Through its attorneys, OSGATA asked Monsanto for a promise that it would not sue OSGATA's members for patent infringement if they happened to become contaminated by Monsanto's seed. Monsanto refused OSGATA's request.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury under the laws of the United States, that the foregoing is true and correct to the best of my knowledge and belief.

_Bryce Stephens_
Bryce Stephens

Executed on __7-27__, 2011

5