UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORGANIZATION SEED GROWERS AND TRADE ASSOCIATION, et al.,<br><br>                    Plaintiffs,<br><br>            v.<br><br>MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC,<br><br>                    Defendants. | ECF CASE<br><br>No. 11-cv-2163-NRB<br><br>Jury Demanded |

**DECLARATION OF FREDERICK KIRSCHENMANN
IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

I, Frederick L. Kirschenmann, declare as follows:

1. I am President of plaintiff Kirschenmann Family Farms Inc. ("KFF"), my family's 3,500-acre certified organic farm in Windsor, North Dakota.

2. I am also a Distinguished Fellow at the Leopold Center for Sustainable Agriculture at Iowa State University and President of Stone Barns Center for Food and Agriculture in Pocantico Hills, New York.

3. I previously completed a five year term on the U.S. Department of Agriculture's National Organic Standards Board and chaired the administrative council for the USDA's North Central Region's Sustainable Agriculture Research and Education (SARE) program. I also served on the National Commission on Industrial Farm Animal Production operated by the Johns

Hopkins School of Public Health and funded by Pew Charitable Trusts. In 2010, I was awarded the National Resource Defense Council's *Growing Green Thought Leader* Award.

4.  I earned degrees from Yankton College in South Dakota, Hartford Theological Seminary in Connecticut, and a Ph.D. in philosophy from the University of Chicago, where I earned numerous awards including a Rockefeller Fellowship.

5.  I was the first chair of the Department of Religion at Yankton College, and was Dean of the College at Curry College in Boston. I have authored or co-authored numerous articles and book chapters dealing with ethics and agriculture.

6.  I am a third-generation farmer. My German grandfather farmed the Volga River area in Russia and immigrated to Lincoln, Nebraska, in the late 1800s. My family has been farming at the current location of KFF since 1930.

7.  KFF has been part of a number of research studies and has been featured in national publications including *National Geographic*, the *Smithsonian*, *Audubon*, *Business Week*, the *LA Times* and *Gourmet* magazine.

8.  KFF has been a certified organic farm since 1980 and raises eight to nine crops each year in three different rotations.

9.  In the past, KFF grew canola. When transgenic (sometimes called "genetically modified" or "GMO") canola was introduced, I would ask my neighbors to tell me if they intended to use it, as I wanted to protect my farm from contamination by such seed. Contamination of organic fields by transgenic seed can occur many ways and is often

unavoidable even if an organic farmer uses all of their best efforts to try and prevent it.

10. When a neighbor told me they intended to use transgenic canola, KFF would implement a buffer on its own land of 2 to 3 miles in order to protect its organic canola from contamination. Eventually, however, the use of transgenic canola became so widespread that I could no longer find any of my land that was safe from contamination. Thus, the fear of contamination by transgenic seed caused KFF to cease growing organic canola.

11. Contamination by transgenic seed threatens organic farms in two significant ways. First, it threatens the organic qualification of the farm, and the ability of the farm to sell its crops to certain customers (Japan, for example, has a strict no-tolerance ban on the importation of any contaminated crops). For KFF specifically, having to give up raising organic canola represented an annual loss of income of $25,000 to $50,000. Also, because canola is one of the few broad-leaf cool season crops we can grow in ND, our inability to grow it left a significant gap in our organic crop rotation pattern of alternating cool reason and warm season crops and broad-leaf and grassy crops. It is such alternative rotation patterns that enables us to maintain weed and pest control without herbicides or pesticides. Thus, it was very harmful to our farm to lose the ability to grow organic canola as a result of the threat of transgenic contamination.

12. Second, contamination by transgenic seed also threatens organic farms with possible allegations of patent infringement by Monsanto, the company that sells the transgenic seed. It is well known throughout the farming community, and particularly the organic farming community, that Monsanto is the world's largest distributor of transgenic seed and that they

aggressively assert their patents relating to that seed against any farmer found to possess such seed without having paid Monsanto a license. Monsanto's patent assertion tactics have been the subject of countless media reports and several films about farming that I have seen.

13. When KFF ceased growing canola due to the risk of contamination, this was in no small part due to the threat that contamination would expose KFF to potentially being accused of patent infringement by Monsanto. I am aware that Monsanto has made ambiguous statements about not asserting its patents against organic farmers, but they have never waived such right against KFF or me personally, despite my attorney, Daniel Ravicher of the Public Patent Foundation, asking them to do so.

14. KFF has the resources, desire and technological capability to grow organic canola and very much wishes to do so. We grew it in the past and could easily grow it again. However, I am afraid that any organic canola grown at KFF would become contaminated by transgenic canola seed and then lead to accusations of patent infringement by Monsanto. Thus, KFF is unfortunately not growing organic canola today.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury under the laws of the United States, that the foregoing is true and correct to the best of my knowledge and belief.

_____
Frederick L. Kirschenmann

Executed on 7/27, 2011

4